**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Anne Champion
Direct: +1 212.351.5361
Fax: +1 212.351.5281
AChampion@gibsondunn.com

Via ECF

February 6, 2023

The Honorable Robert W. Lehrburger
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *In re Application of Forensic News LLC & Scott Stedman*, No. 22-MC-0229

Dear Judge Lehrburger:

Pursuant to Your Honor's February 2, 2023 Order, we write as counsel for Petitioners in reply to Respondent Mark Rossini's Opposition to our Letter Motion to Compel.

***1. Deposition Deficiencies.***[1]  During his deposition, Rossini invoked the Fifth Amendment *nearly forty times* over the course of three hours.[2]  He invoked this privilege in response to innocuous questions like "[d]o you own a consulting firm[?]" and "have you ever heard of a company named Strabag?"  Ex. A at 27, 83.  Rossini also invoked with respect to multiple questions about Walter Soriano—the claimant in the English Defamation Action and the subject of Petitioners' reporting.  For instance, Rossini invoked the Fifth Amendment when Petitioners asked whether *Soriano*—not Rossini—has "ever met Mr. Rybolovev."  *Id.* at 87.

As his own cited case confirms, to justify each invocation, it was Rossini's burden to "explain how his answer will be incriminatory."  *United States v. Edgerton*, 734 F.2d 913, 919 (2d Cir. 1984).  Although that burden "forces a witness to come dangerously close to doing that which he is trying to avoid," the high burden to justify a privilege invocation is "properly borne by the witness."  *Id.*  Specifically, the witness bears the burden of demonstrating a "reasonable cause to apprehend that answering the question will provide the government with evidence to fuel a criminal prosecution"—not merely investigation.  *See OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 262 F. Supp. 2d 302, 306 (S.D.N.Y. 2003).

Rossini has not carried his burden.  Based on both his answers in his deposition and January 27 letter, the heart of his invocation appears to be his concern that his answers may lead to "further *investigation* into his conduct."  Opp. at 2 (emphasis added).  But nowhere in his letter does he explain what that investigation might entail or offer a reasonable basis to

---

[1] Attached hereto as Exhibit A is an excerpted transcript of Rossini's deposition.  For the Court's convenience we have highlighted each of the instances in which Rossini invoked the Fifth Amendment privilege.

[2] The parties agreed that Rossini's deposition would be limited to three hours, subject to Petitioners' reserving the right to recall Rossini for further questioning if necessary, to accommodate Rossini's health conditions.  *See* Ex. A at 7.  While Petitioners were able to present most of their questions, the transcript is littered with improper and extended speaking objections by Rossini's *two* defending attorneys.  *See, e.g.*, *id.* at 70–71, 75, 77–79.  Petitioners respectfully request that in any second deposition, Rossini's counsel be limited to objecting to form and instructing on privilege and that only one counsel be permitted to defend the deposition.

**GIBSON DUNN**

The Honorable Robert W. Lehrburger
February 6, 2023
Page 2

believe that this hypothetical investigation would actually lead to *prosecution*. Such a fear would not be reasonable, even if he had expressed it. Rossini suggests that answering *any* questions about his post-FBI employment would be incriminatory because "[i]t is well known that the U.S. Department of Justice ("DOJ") is actively investigating and prosecuting individuals who worked with Russian oligarchs." Opp. at 2. But working with Russian oligarchs is not inherently criminal.[3] Rossini compares himself to Charles McGonigal, who was recently indicted for conspiring to provide services to Russian oligarch Oleg Deripaska. But McGonigal wasn't indicted merely for working with an oligarch. Rather, his work exposed him to criminal liability because it was allegedly done in violation of U.S. sanctions imposed on Deripaska in 2018. Deripaska himself was indicted on the same grounds.[4] By contrast, Petitioners understand that the bulk of the work USG performed for Deripaska occurred in or around 2014 through 2017—before those sanctions took effect. Rossini utterly fails to explain why work for Deripaska (let alone Rybolovlev) prior to 2018 would reasonably expose him to prosecution for violation of sanctions that did not then exist. *See Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972). Even if Rossini's connection to these oligarchs exposed him to a risk of prosecution, some questions for which Rossini invoked the privilege did not even concern Rossini. Questions like "[h]as Mr. Soriano ever communicated with Mr. Deripaska?" and "[h]as Mr. Soriano ever met Mr. Rybolovlev?" ask nothing about Rossini's involvement with these individuals. Petitioners struggle to see how answers to these questions could "provide the government with evidence to fuel a criminal prosecution" against Rossini. *OSRecovery*, 262 F. Supp. 2d at 306.

Rossini's cited cases are distinguishable. In *Krape v. PDK Labs, Inc.*, the deponent raised the privilege in response to questions "designed to elicit testimony . . . regarding an alleged criminal conspiracy in which plaintiff claims [the deponent] to have been involved." 2004 WL 831137, at *5 (E.D.N.Y. Apr. 19, 2004). Here, by contrast, Petitioners have not alleged that Rossini was involved in any criminal conduct. Instead, they asked basic questions about his prior employment and employer. In *Booth v. Wilson*, the deponent raised the privilege in response to questions about whether he filed a fraudulent tax document to justify an illegal transaction. 208 F.3d 202, at *2 (2d Cir. 2000) (table). No comparable allegations have been made here. And in *United States v. Housand*, a witness raised the privilege when faced with possible perjury charges if he testified inconsistently with past testimony about the same facts, a situation entirely dissimilar from the instant case. 550 F.2d 818, 823 (2d Cir. 1977).[5]

---

[3] That Petitioner Stedman tweeted "[t]here's more here, folks," is irrelevant. *See* __. Petitioners' observation that Rossini has associations with alleged criminals does not itself render those connections criminal.

[4] Press Release, *Russian Oligarch Oleg Vladimirovich Deripaska and Associates Indicted for Sanctions Evasion and Obstruction of Justice* (Sept. 29, 2022), available at https://www.justice.gov/usao-sdny/pr/russian-oligarch-oleg-vladimirovich-deripaska-and-associates-indicted-sanctions-evasion.

[5] Rossini's counsel makes hay over the fact that Petitioners asked Rossini targeted questions about his pending indictment for bribery of then-Puerto Rico Governor Wanda Vazquez Garced. None of the questions Petitioners asked were objectionable—rather, they merely posed questions about the text of the indictment. Confirming whether Rossini "generally understands" the indictment's contents where Rossini is invoking the

The Honorable Robert W. Lehrburger
February 6, 2023
Page 3

This Court should compel Rossini to sit for a second deposition and answer questions on topics including his work with USG, USG's clientele, and his knowledge of Soriano's work for and relationship with individuals including Oleg Deripaska and Dmitry Rybolovlev.

2. **Improper Withholding of Documents.** Rossini's invocation of the act of production privilege is unjustified. That privilege applies only where the production *itself* would be incriminating, not the contents of documents within the production. *See Fisher v. United States*, 425 U.S. 391, 410 (1976). Rossini argues that Petitioners' requests would require him "to produce documents related to a number of subjects concerning" individuals such as Rybolovlev and Deripaska, which counsel asserts "is tantamount to compelling testimonial, and incriminating statements." Opp. at 3 (alterations adopted). That is not a proper invocation of the act of production privilege. In essence, Rossini is arguing that the *contents* of the documents sought are incriminating. But the act of production privilege does not protect a party from having to produce documents merely because they have incriminating *content*—the privilege applies only where the act of production *itself* conveys something testimonial. *In re Grand Jury Subpoena*, 741 F.3d 339, 343 (2d Cir. 2013). To put a fine point on it, Rossini could resist under the act of production privilege a subpoena requiring production of a stolen television because the act of producing that contraband is itself incriminating and confirms his guilt. Likewise, if the subpoena asked Rossini to produce "all documents that prove you stole a television," the act of production privilege may apply. But the privilege would not shield him from producing emails with an associate merely because in one of those emails he admitted "I stole a television." The incriminating information in that instance is the *content* of the email, not the act of producing it. The act of production privilege does not even colorably apply here. Rossini should be required to promptly produce any and all responsive documents he has withheld.

3. **In Camera Review.** At the very least, the Court should order Rossini to promptly present *in camera* a fulsome proffer to justify his invocations, as other courts have required. In *Fasolino Foods Co. v. Banca Nazionale Del Lavoro*, for example, the court ordered the deponent to submit for *in camera* review "an affidavit to the Court stating the crime with which he is charged, his basis for believing that the information sought by defendant would be incriminating in the [] prosecution and the status of the [] prosecution." 1992 WL 123650, at *3 (S.D.N.Y. May 28, 1992). Here, too, Rossini should be required to submit to the Court information concerning the crimes with which he believes he could be charged, his basis for believing that the information sought would prove those crimes, and the status of pending investigations into his relevant conduct (if any exist). And should the Court suspect that the act of production privilege may apply (and it does not), it should order Rossini to produce any withheld documents for prompt *in camera* review. *See United States v. Gendreau*, 2014 WL 464754, at *3 (S.D.N.Y. Jan. 22, 2014).

---

Fifth Amendment privilege based on that indictment is plainly proper. *See* Ex. A at 72. So, too, should Rossini have been able to admit or deny whether Soriano is "mentioned anywhere in th[e] indictment." *Id.* at 72-73.

**GIBSON DUNN**

The Honorable Robert W. Lehrburger
February 6, 2023
Page 4

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*s/ Anne Champion*
Anne Champion

cc:     All counsel of record (via ECF)