# EXHIBIT A

Page 1

1

2      UNITED STATES DISTRICT COURT

3      EASTERN DISTRICT OF NEW YORK

4      ------------------------------------x

5      In Re Application of FORENSIC NEWS LLC
       and SCOTT STEDMAN for an Order Pursuant

6      to 28 U.S.C. Section 1782 to Conduct Discovery
       for the use in a Foreign Proceeding

7      ------------------------------------x

                                January 13, 2023

8                               9:43 a.m.

9

10

           Deposition of MARK T. ROSSINI, taken by

11      Attorneys for FORENSIC NEWS and SCOTT STEDMAN,
        pursuant to 1782 Subpoena, with the Witness

12      located in Madrid, Spain, before William
        Visconti, a Shorthand Reporter and Notary

13      Public within and for the State of New York.

14

15

16

17

18

19

20

21

22

23

24

25

```
                                              Page 2

 1
 2      A P P E A R A N C E S:
             GIBSON DUNN & CRUTCHER LLP
 3           Attorneys for Forensic News and Scott
             Stedman
 4                  200 Park Avenue, 47th Floor
                    New York, NY 10166
 5
             BY:    ERICA SOLLAZZO PAYNE, ESQ.
 6                  epayne@gibsondunn.com
                    ELEANOR R. COATES, ESQ.
 7                  ecoates@gibsondunn.com
 8
 9           BAILEY DUQUETTE
             Attorneys for The Witness
10                  104 Charlton Street, Suite 1W
                    New York, NY 10014
11
             BY:    DAVID GREENBERGER, ESQ.
12                  david@baileyduquette.com
13                       -and-
14           STUMPHOUZER KOLAYA NADLER & SLOMAN PLLC
             Attorneys for The Witness
15                  One Biscayne Tower Two
                    S. Biscayne Boulevard, Suite 1600
16                  Miami, Florida 33131
17           BY:    MICHAEL NADLER, ESQ.
                    mnadler@sknlaw.com
18
19
        ALSO PRESENT:
20
             ADAM BALENCIAGA, Concierge
21
22
23
24
25
```

1

2          IT IS HEREBY STIPULATED AND AGREED

3     by and between the attorneys for the

4     respective parties herein that filing and

5     sealing be and the same are hereby waived.

6          IT IS FURTHER STIPULATED AND AGREED

7     that all objections, except as to the form

8     of the question, shall be reserved to the

9     time of the trial.

10          IT IS FURTHER STIPULATED AND AGREED

11     that the within deposition may be signed

12     and sworn to before any officer authorized

13     to administer an oath with the same force and

14     effect as if signed and sworn to before the

15     Court.

16

17

18

19

20

21

22

23

24

25

1

2                    M A R K    T.    R O S S I N I,

3            having been first duly sworn by the Notary Public,

4            was examined and testified as follows:

5                    MR. GREENBERGER:   This is

6            Mr. Greenberger.  Before the deposition

7            commences there is something that

8            Mr. Nadler and I want to put on the record

9            if we could, respectfully.

10                   As counsel for Gibson Dunn knows,

11           Mr. Rossini engaged Mr. Nadler and I well

12           after he received the subpoena.  We've done

13           our best to work with them in a

14           collaborative manner.  On January 10th,

15           Mr. Nadler and I had a meet and confer at

16           Gibson Dunn's request to discuss this

17           deposition and our prior representation

18           that we believe its subject matter impacts

19           our client's constitution rights and more

20           specifically the Fifth Amendment.

21                   During that January 10th call

22           Mr. Nadler and I sought to engage with

23           counsel for the issuing party in an

24           iterative and collaborative manner as we've

25           done on a number of occasions in the past.

1

2          We were thus surprised and disappointed to

3          receive yesterday a letter that purports to

4          have confirmed our conversation, Mr. Nadler

5          and I without belaboring it I believe in

6          some respects at least misstates and

7          mischaracterizes what we had said.

8                 Most specifically for me that

9          portion of the letter in which it implies

10         that I contradicted Mr. Nadler.  I never

11         did.  What I did was jump in in an effort

12         to protect our client's attorney-client

13         privilege because I thought a question

14         asked by an attorney at Gibson Dunn

15         directly asked about our communication

16         with Mr. Rossini and I wanted to protect

17         that and I thought the question was

18         inappropriate.

19                We are ready to proceed.  We did not

20         have the opportunity yesterday because of

21         other litigation obligations to respond in

22         writing to the letter and I just wanted to

23         note here that we do dispute its

24         characterization.

25                That being said, I will also want to

Page 6

```
 1
 2              say a couple of things on the record that
 3              Mr. Nadler and I have said repeatedly.
 4                    Mr. Rossini is under criminal
 5              indictment, that is why Mr. Nadler is here.
 6              Mr. Nadler is his very capable criminal
 7              attorney.  I'm a civil attorney.
 8                    Mr. Rossini also unfortunately is
 9              suffering from very serious medical issues
10              in form of cancer.  We ask that counsel be
11              mindful of both issues as we move forward.
12                    I also want to note that certain
13              questions -- I will wait for the questions.
14              Why don't we proceed.  Thank you for giving
15              me that opportunity.
16                    MS. PAYNE:   Thank you, David.  I
17              will just say we believe that our characterization
18              of our call on January 10th is accurate as
19              we explained in our letter.  The cases that
20              we cited clearly support the proposition
21              that the existence of a pending criminal
22              indictment alone does no support indication
23              of the Fifth Amendment with respect to
24              every question beyond those about general
25              background.
```

1

2               There must be a reasonable basis to

3         think that answering the specific question

4         posed will give the government evidence to

5         fuel the criminal prosecution.  And the

6         risk of impeachment likewise is not a basis

7         for asserting the Fifth Amendment

8         privilege.

9               You're free to respond to our letter

10        in writing and we will just reserve our

11        rights to challenge the scope of

12        Mr. Rossini's indications if we feel that

13        we need to.

14               We appreciate and understand that

15        Mr. Rossini is suffering from health issues

16        and as we have indicated to you on our

17        prior calls, we are willing to accommodate

18        those issues by taking as many breaks as

19        Mr. Rossini might need and by limiting our

20        deposition sessions to 3 hours on the

21        record.  So that's all I will say for the

22        moment on that.

23               I'm just going to ask my questions

24        today and we will deal with the Fifth

25        Amendment as we go.

```
 1                    MARK T. ROSSINI
 2    EXAMINATION CONDUCTED BY MS. PAYNE:
 3          Q.     So with that I will say, hello to
 4    you, Mr. Rossini, and thank you very much for
 5    being here today.  Can you hear me?
 6          A.     Yes.
 7          Q.     My name is Erica Payne.  I'm with
 8    the law firm of Gibson Dunn & Crutcher in New
 9    York City and I'm here today with my colleague,
10    Eleanor Coates, My Colleague Lee Crane and Kate
11    McCaffrey may also be joining or listening in
12    on portions of the deposition today.
13               I represent Forensic News LLC and
14    Scott Stedman.  This deposition today is not
15    part of the criminal case against you in
16    federal court.  This is an unrelated civil
17    proceeding where you are a third-party witness.
18    And we are here to ask questions today
19    primarily about Walter Soriano who has brought
20    a liable suit in England against my clients and
21    about his consulting firm USG.
22               Mr. Rossini, are you aware that
23    your attorney --
24               MR. GREENBERGER:   Erica, sorry to
25         interrupt.  Just a point of clarification
```

```
 1                    MARK T. ROSSINI
 2          of what you said.  You said that other
 3          colleagues might be listening in, does that
 4          mean they won't be in the room would you?
 5                    MS. PAYNE:  Correct, they are not
 6          physically present, but they may be joining
 7          via the Zoom link.
 8                    MR. GREENBERGER:  Okay, I want to
 9          note for the record that my position is
10          that we should be able to see them if
11          they're participating just like you can see
12          us.
13                    MS. PAYNE:  To my knowledge no
14          one else is on the link at the moment and
15          if they join we will clarify that for the
16          record.
17                    MR. GREENBERGER:  Thank you.
18          Q.    Mr. Rossini, are you aware that
19     your attorney and I conferred on Tuesday of
20     this week regarding the scope of any potential
21     Fifth Amendment issues?
22                    MR. GREENBERGER:  Objection.
23                    MR. NADLER:  Objection.
24          Conversations between attorneys and their
25          clients.  Do not answer that.
```

```
 1                    MARK T. ROSSINI
 2              MS. PAYNE:   I'm just asking if he
 3         is generally aware.
 4              MR. NADLER:   Do not answer that.
 5         We are not starting off on a great foot
 6         here.  Him being aware means that we had a
 7         conversation related to him.
 8              MS. PAYNE:   Okay, I'm just asking
 9         for his general awareness that you spoke.
10              MR. NADLER:  You're now asking about
11         attorney-client privileged information
12         about what conversations we had with the
13         client and the scope and content.  That is
14         not proper.
15              MS. PAYNE:   I'm not asking for the
16         content of any of the conversations.
17              MR. NADLER:   I'm not arguing with
18         you.  He is not answering the question.
19              MS. PAYNE:   Okay.
20         Q.    Mr. Rossini, do you intend to
21    invoke the Fifth Amendment to certain questions
22    that I ask today?
23         A.    As instructed by my attorneys I
24    will be invoking it if it is necessary, yes.
25         Q.    Understood.  We will take it
```

                    MARK T. ROSSINI

1

2            help explain where I think it is coming

3            from.

4                    THE WITNESS:   You're correct.

5                    MS. PAYNE:   Thank you, David.

6            Q.    Mr. Rossini, if you need to seek

7      your lawyer's advice with respect to whether

8      and how you're going to invoke your Fifth

9      Amendment right against self-incrimination,

10     then I will allow you to confer with your

11     attorneys even if a question pending.  Does

12     that sound okay?

13           A.    That is very kind.

14                   MR. GREENBERGER:   Erica, I also

15           want to say something in full disclosure

16           before you get started.

17                   MS. PAYNE:   Sure.

18                   MR. GREENBERGER:   A subpoena duces

19           tecum was part of the 1782 Subpoena to

20           Mr. Rossini.  After considering all of the

21           issues and conferring with Mr. Nadler we

22           are asserting the Fifth Amendment active

23           production privilege in response to the

24           same.  Based on our understanding of

25           applicable Second Circuit law no log is

Page 18

1                    MARK T. ROSSINI

2          required.

3                    For the avoidance of any doubt and

4          to avoid a contention of waiver later, I

5          also want to put on the record that we

6          believe that the responsive documents would

7          also be protected from disclosure by

8          attorney-client, work product and

9          litigation privileges held by other

10         entities and persons and all rights are

11         expressly waived -- I'm sorry, all rights

12         are expressly reserved in connection with

13         those assertions.

14                   I will confirm that in writing after

15         the deposition, but I didn't want to ignore

16         the fact that there was a subpoena ducas

17         tecum attached to the 1782 Subpoena.

18              MS. PAYNE:   Thank you, David, and

19         we would appreciate if you put that position

20         in writing after today's deposition.

21                   I do plan to ask Mr. Rossini some

22         questions about what efforts he may have

23         made to locate documents that may be

24         responsive to our subpoena setting aside

25         any privileges you may or may not choose to

```
                            MARK T. ROSSINI
 1
 2            assert.  But we would appreciate it if you
 3            put your position in writing for us.
 4                      MR. GREENBERGER:   Mr. Nadler
 5            certainly will and I wanted to make sure
 6            that was on the record.  You may proceed.
 7                      MS. PAYNE:   Thank you.
 8            Q.    Mr. Rossini, where are you
 9      testifying from today?
10            A.    Just outside of Madrid, Spain.
11            Q.    Is there anyone else in the room
12      with you?
13            A.    No.
14            Q.    Will you please let me know if
15      anyone does joins you in the room today?
16            A.    Sure.
17            Q.    Other than the computer that
18      you're using to connect by video, do you have
19      any other devices with you today?
20            A.    My phone.
21            Q.    Any other devices?
22            A.    My iPad.
23            Q.    Any other devices other than your
24      phone and iPad?
25            A.    No.
```

```
                                          Page 26
 1                   MARK T. ROSSINI
 2        A.      Counter terrorism.
 3        Q.      Did there come a time when you
 4    left the FBI?
 5        A.      Yes.
 6        Q.      What year was that?
 7        A.      2008.
 8        Q.      Why did you leave the FBI in 2008?
 9        A.      I think upon the advice of my
10    counsel I'm invoking my Fifth Amendment
11    afforded to me under the constitution.
12        Q.      Was your resignation connected to
13    certain criminal charges against you?
14        A.      Again I have to invoke my Fifth
15    Amendment rights as advised by my counsel.
16        Q.      Were you charged with certain
17    crimes in 2008?
18        A.      Once again, I want to invoke my
19    Fifth Amendment rights pursuant to my counsel's
20    advice.
21        Q.      Mr. Rossini, it is okay if you
22    respond with Fifth Amendment just moving
23    forward to keep things moving.  I will accept
24    that as an invocation of your Fifth Amendment
25    rights.
```

```
 1                    MARK T. ROSSINI
 2           A.      Thank you.
 3           Q.      Sure.  Mr. Rossini did you plead
 4      guilty to criminal charges in 2008?
 5           A.      Fifth Amendment again.
 6           Q.      Were you sentenced for certain
 7      criminal charges in 2008?
 8           A.      Fifth Amendment.
 9           Q.      Mr. Rossini, what did you do next
10      after working for the FBI?
11           A.      Fifth Amendment.
12           Q.      After you stopped working for the
13      FBI did you start your on consulting firm?
14           A.      Again, Fifth Amendment.
15           Q.      Do you own a consulting firm
16      called MTR Associates?
17           A.      Again, Fifth Amendment.
18                   THE WITNESS:   Can we take a break
19              so I can talk to my lawyer, please?
20                   MS. PAYNE:   Sure we can go off the
21              record.
22                   (Recess Taken)
23      BY MS. PAYNE:
24                   MR. NADLER:   Mark, do you want to
25              provide some additional context and go back
```

MARK T. ROSSINI

1

2          to some of the questions?

3          A.     Okay, you asked about my departure

4     from the FBI.  I resigned from the FBI in 2008.

5     Some time in 2009 I pled guilty to five

6     misdemeanor charges.  The exact I think it was

7     unauthorized access to a government computer or

8     something like that.  I don't remember the

9     specifics.  But it is all on the public record.

10    It is all over Google.  It is over in the

11    courthouse, you know it.  Okay.

12               You know from the public record I

13    was sentence to one year probation.  You know

14    from the public record that I started a

15    management consulting company called MTR

16    Associates.  I think that clarifies your

17    questions.

18         Q.     Thank you, Mr. Rossini.  We agree

19    this is a matter of public record.  One clarifying

20    question for you.  You mentioned that you

21    served one year probation.  Did you successfully

22    serve that term of probation?

23         A.     Yes.

24         Q.     Mr. Rossini, you confirmed that

25    you started your own consulting firm named MTR

```
 1                      MARK T. ROSSINI
 2      anything taken out of context, I just don't
 3      know.  I'm letting you know my objection if I'm
 4      allowed to do that.  Go right ahead.  In that
 5      context I'm answering.
 6              Q.      Understood.  Let's just take this
 7      one at a time at the most general level.
 8                      Do you know whether USG ever
 9      performed any work of any kind for Mr. Abramovich
10      to the extent that you can answer yes or no?
11              A.      Not that I'm aware of.  I don't
12      know.
13                      MR. GREENBERGER:   Can I put one
14              other thing on the record, Erica, I
15              apologize?
16                      MS. PAYNE:   Yes.
17                      MR. GREENBERGER:   Because I think
18              this is the opportune time.  Earlier this
19              week I asked Erica, Miss Payne, if this
20              deposition would be treated confidential
21              and only for use in this 1782 action and
22              the underlying litigation and Erica
23              couldn't commit to that in an e-mail but
24              said we would address it on a case-by-case
25              basis.
```

```
 1                  MARK T. ROSSINI
 2              I want to point out too that to the
 3         extent there were nondisclosure agreements
 4         between Mr. Rossini and USG that there are
 5         serious confidentiality concerns about
 6         disclosure separate and apart from
 7         privilege or litigation privilege under UK
 8         law or work product under American law and
 9         the Fifth Amendment issues we spent so much
10         time talking about.
11              So you asked me in your e-mail to
12         let you know when I thought we were getting
13         to a spot where that concern would be right
14         and I think we are at that point.
15              So, again, just to explain to you,
16         if Mr. Rossini had some sort of confidentiality
17         obligation to USG or on any of the matters
18         that he may or may not have worked, then he
19         has a concern as I understand it and we
20         have a concern, Mr. Nadler and I, that it
21         is going to go up on the internet and there
22         is going to be consequences to Mr. Rossini
23         simply because he answered the question
24         under oath.  I just wanted to point that
25         out.
```

```
 1                    MARK T. ROSSINI
 2              MS. PAYNE:   Okay.  I also point
 3         out, Mr. Greenberger, as we wrote to you
 4         yesterday, we agreed to work with you after
 5         Mr. Rossini provided testimony.
 6              MR. GREENBERGER:   I know you did.
 7         We are on the same page that is why you
 8         asked me to point out if that concern came
 9         up when it came up so that is what I'm
10         doing.
11              MS. PAYNE:   Understood and thank
12         you.  I just would like to put on the record as
13         well that we agreed to work with you to
14         address any of your concerns in good faith
15         after this deposition consistent with
16         United States and United Kingdom law.
17              To the extent that you're claiming
18         that Mr. Rossini had a nondisclosure
19         agreement with USG, I don't think that
20         would be a basis for refusing to answer
21         questions today.
22              MR. GREENBERGER:   I want to be
23         absolutely clear.  I didn't instruct him
24         not to answer on that basis.  I'm pointing
25         out the concern and I would ask pursuant to
```

```
 1                    MARK T. ROSSINI
 2         your representation that this -- any
 3         answers that he gives don't go up on the
 4         internet in the interim time period before
 5         Mr. Nadler and I get to review the
 6         testimony and confer with our client.  Can
 7         you give us that assurance?
 8              MS. PAYNE:   I believe I could give
 9         you the assurance that we will not make any
10         portion of Mr. Rossini's testimony public
11         while you and Mr. Greenberger or before you
12         and Mr. Greenberger had a chance to review
13         the testimony and we will follow the rules
14         of any court in which we were to file a
15         portion of Mr. Rossini's testimony and as
16         long as you're not directing Mr. Rossini to
17         refuse to answer questions on that basis I
18         think we can proceed.
19              MR. GREENBERGER:  We are almost
20         here.  I think you meant Mr. Nadler, but
21         thank you for your representation.
22              There is a concern on our side that
23         anything he says is going to be put up by
24         your client on the internet.  And as long
25         as you can assure us that won't happen at
```

```
                                              Page 63

 1                    MARK T. ROSSINI

 2            least for the interim period while

 3            Mr. Nadler and I can review a final

 4            transcript and consult with our client,

 5            then we have no -- we certainly can

 6            proceed.  I think you have given us that

 7            assurance and I appreciate it.

 8                   MS. PAYNE:  Okay.  And to be clear,

 9            my assurance is that we will not make

10            public Mr. Rossini's testimony other than

11            in connection with this legal proceeding or

12            in the legal proceeding in the UK.

13                   MR. GREENBERGER:  When you say we,

14            you're speaking also on behalf of your

15            client, right?

16                   MS. PAYNE:  David, can we actually

17            go off the record for a second.  I just

18            want to confer with my team since you're

19            asking for a representation.

20                   MR. GREENBERGER:  Yes.

21                   (Recess taken.)

22                   MS. PAYNE:  So I conferred with my

23            team in the interim while we were off the

24            record just now and I can represent that

25            it's not our or our client's intent to post
```

```
 1                     MARK T. ROSSINI
 2          Q.      Has Mr. Soriano ever done worked
 3      for a representative of Mr. Abramovich, to the
 4      best of your understanding?
 5                     MR. GREENBERGER:   Same objection,
 6               litigation, you can answer.
 7          A.      Same answer as before.  I have no
 8      way of knowing that, I don't know.
 9          Q.      Do you know whether Mr. Soriano
10      has ever met Mr. Abramovich?
11          A.      No.  How would I know that?  I
12      have no knowledge of that.  I don't know.
13          Q.      Do you know whether Mr. Soriano
14      has ever communicated with Mr. Abramovich?
15          A.      I told you before, I don't know.
16      I have no -- I don't know.
17          Q.      Do you know whether Mr. Soriano
18      and Mr. Abramovich have ever had any kind of
19      business relationship?
20          A.      No, I wouldn't have any reason to
21      know.  I don't know.
22          Q.      Okay.  My next set of questions
23      are going to be about Mr. Oleg Deripaska.
24      Skipping down a few names on the subpoena.  Has
25      USG ever performed work for Mr. Deripaska?
```

```
 1                    MARK T. ROSSINI
 2                    MR. GREENBERGER:   Same objection,
 3             litigation privilege.  You may answer,
 4             Mark.
 5             A.     On the advice of my attorneys the
 6       Fifth Amendment.
 7             Q.     To be clear, do you intend to
 8       invoke the Fifth Amendment for any questions
 9       related to any work USG may have performed for
10       Oleg Deripaska?
11             A.     I believe so.
12                    MR. GREENBERGER:   Objection to the
13             form of the question, that assumes something
14             that he didn't say by invoking his Fifth,
15             so objection to the form of the question.
16             Q.     You can answer, Mr. Rossini?
17             A.     Yes, anything to do with
18       Mr. Deripaska will be a Fifth Amendment, yes.
19             Q.     Mr. Rossini, I'm going to show you
20       a different document that I will introduce as
21       Exhibit 2.  It is going to be the indictment
22       dated August 3rd, 2022 in the matter United
23       States v. Wanda Vasquez Garced.  Case number
24       22-342.
25                    MR. NADLER:  Sorry to interrupt, if
```

```
 1                    MARK T. ROSSINI
 2          you're going to ask him any questions
 3          related to that indictment, he's going to
 4          assert the Fifth blanket.  He will not
 5          answer one question related to that
 6          indictment or that case or that
 7          investigation.
 8                    MS. PAYNE:   Okay.  We will go
 9          question by question.  I think I can ask a
10          couple of questions.
11                    THE CONCIERGE:  Is this item number
12          two in the folder?
13                    MR. NADLER:  I also would like to go
14          on the record.  I think it is improper to
15          ask him any questions regarding an existing
16          indictment and pending charges in federal
17          court where he is still fighting those
18          charges.
19                    MS. PAYNE:   Your objection is
20          noted, Mr. Nadler.  I would still like to
21          bring up the indictment, please.
22                    MS. COATES:  Adam this is Document
23          number 2.
24                    (Rossini Exhibit 2 for
25          identification, Indictment dated August
```

```
 1                     MARK T. ROSSINI
 2             3rd, 2022 in the matter United States v.
 3             Wanda Vasquez Garced.)
 4             Q.    Mr. Rossini, do you see the
 5     document up on your screen?
 6             A.    Yes.
 7             Q.    Do you recognize this document?
 8                   MR. GREENBERGER:   Objection.  I'm
 9             just going to be a little more blunt then
10             my colleague.  We here in good faith under
11             a 1782 Subpoena after multiple meet and
12             confers and you have now put in front of
13             the witness the actual indictment for which
14             all of the Fifth Amendment privileges have
15             been founded.
16                   And I'm just stunned and you have
17             Mr. Nadler's position as a criminal lawyer
18             on the record that he asserted a blanket
19             Fifth Amendment privilege on his client's
20             behalf with respect to this issue.  And now
21             you're asking him questions about the very
22             document Mr. Nadler just put his objection
23             on the record with respect to.
24                   So I will defer to my criminal
25             defense colleague, but I'm just -- I guess
```

```
1                        MARK T. ROSSINI

2              all I can do is to ask you to stop and I

3              can't force you to stop.

4                    MS. PAYNE:   Mr. Greenberger, I'm

5              just clarifying the breath and scope of

6              Mr. Rossini's position on his Fifth

7              Amendment privilege.  I don't think there

8              is anything --

9                    MR. GREENBERGER:   Miss Payne, with

10             all due respect, that's not his job.  That is why

11             he has two lawyers in this deposition.  It

12             is not his job to give you the context of

13             his privilege.

14                   MS. PAYNE:   I disagree, Mr. Greenberger --

15                   MR. GREENBERGER:   That's why he has

16             counsel.  All I said that is why he has

17             counsel.

18                   MS. PAYNE:   I don't think there is

19             anything inappropriate about showing him

20             this indictment and using it to clarify the

21             breath and scope of his position on the

22             Fifth Amendment privilege.

23                    So I'm going to ask my questions and

24             I don't think that I have asked him anything

25             inappropriate so far.  All I asked him is
```

```
 1                    MARK T. ROSSINI
 2          whether he recognize this document.  So I'm
 3          going to proceed and your objection is
 4          noted.
 5          Q.    Mr. Rossini, have you read this
 6     document before?
 7                    MR. GREENBERGER:   Objection.
 8          Q.    You can answer, Mr. Rossini.
 9          A.    Yes.
10          Q.    Do you generally understand its
11     contents?
12                    MR. NADLER:   Mark, do not answer
13          that, take the Fifth.
14          A.    Fifth Amendment.
15          Q.    Is this indictment the reason why
16     you have invoked your Fifth Amendment privilege
17     with respect to questions about work that USG
18     performed for Oleg Deripaska?
19                    MR. NADLER:   As your criminal
20          attorney I'm directing you to take the
21          Fifth.
22          A.    Fifth Amendment.
23          Q.    Okay, let's take a quick look at
24     the indictment.  Mr. Rossini, is Mr. Soriano
25     mentioned anywhere in this indictment, to the
```

```
                                                    Page 73

 1                        MARK T. ROSSINI
 2      best of your recollection?
 3                   MR. NADLER:   As your criminal
 4              attorney I'm advising you to take the
 5              Fifth.
 6                   MR. GREENBERGER:   I also object on
 7              the grounds that the document speaks for
 8              itself.
 9              A.    Fifth Amendment.
10              Q.    Mr. Rossini, are you taking the
11      advice of your criminal counsel to invoke your
12      Fifth Amendment right?
13              A.    Yes.
14              Q.    Sitting here today, can you recall
15      anyplace where Mr. Soriano appears in this
16      document?
17                   MR. GREENBERGER:   Objection, the
18              document speaks for itself.  Same objection
19              as Mr. Nadler.
20              A.    Fifth Amendment.
21              Q.    Can we turn to page 4 of this
22      indictment.  If we scroll down a little bit.
23      There is a section called Relevant Individuals
24      and Entities.  Do you see that?
25              A.    Yes.
```

```
 1                    MARK T. ROSSINI
 2                    MR. GREENBERGER:   Objection, the
 3           document speaks for itself.
 4           Q.    Mr. Rossini, do you have any
 5      reason to believe that Mr. Soriano is listed in
 6      this section as a relevant individual?
 7                    MR. GREENBERGER:   Objection, the
 8           document speaks for itself.
 9                    Miss Payne, I'm going to ask you to
10           move on, this document speaks for itself.
11           You have Mr. Nadler's position on our
12           team's behalf, you're wasting time.
13                    MS. PAYNE:   I disagree,
14           Mr. Greenberger, that I'm wasting time.  I
15           just have a few more questions.  So I will
16           just continue to ask them.
17           Q.    Mr. Rossini, I asked you whether
18      you have any reason to believe Mr. Soriano is
19      listed in this section as a relevant individual?
20                    MR. NADLER:   Mr. Rossini, same
21           answer.
22                    MR. GREENBERGER:   Same objection,
23           the document speaks for itself.
24           A.    Fifth Amendment.
25           Q.    Mr. Rossini, do you have any
```

```
                                            Page 75
 1                    MARK T. ROSSINI
 2     reason to believe Mr. Soriano is one of the
 3     unnamed or anonymous individuals in this
 4     indictment?
 5                    MR. NADLER:   Mark, same answer.
 6            A.      Fifth Amendment.
 7                    MR. NADLER:   This is inappropriate
 8            for you to ask him what is or what he
 9            believes is the potential facts behind an
10            existing criminal indictment.  Whether it
11            is true or not, the question in itself is
12            improper and by definition violates his
13            Fifth Amendment right.
14                    MS. PAYNE:   The objection is noted.
15            Q.      Mr. Rossini, is USG listed in this
16     section as a relevant entity?
17                    MR. NADLER:   Same answer.
18                    MR. GREENBERGER:   Same objection,
19            the document speaks for itself.
20            A.      Fifth Amendment.
21            Q.      If we scroll down to paragraph 18.
22     This paragraph refers to an unnamed international
23     consulting firm.  Do you see that, Mr. Rossini?
24            A.      Fifth Amendment.
25                    MR. GREENBERGER:   Objection, the
```

```
 1                    MARK T. ROSSINI

 2          document speaks for itself.  Miss Payne, if

 3          these are your remaining questions, then I

 4          think we can end the deposition.

 5                    MS. PAYNE:   I have two more

 6          questions and I'm done.

 7          Q.     Mr. Rossini, do you have any

 8     reason to believe USG is the international

 9     consulting firm listed in this paragraph?

10                    MR. GREENBERGER:   Objection.

11                    MR. NADLER:   Objection.

12          A.     Fifth Amendment.

13          Q.     To your knowledge, Mr. Rossini, do

14     the allegations in this indictment have

15     anything to do with Mr. Walter Soriano?

16                    MR. NADLER:   Same answer.

17                    MR. GREENBERGER:   Same objection.

18          Miss Payne, can you make an offer on the

19          record as to what basis you believe you

20          have to ask questions that the government

21          of the United States is not entitled to

22          ask?

23                    MS. PAYNE:   Mr. Greenberger, I'm

24          just clarifying Mr. Rossini's position on

25          the Fifth Amendment and whether he is able
```

```
 1                      MARK T. ROSSINI

 2            to substantiate the connection.

 3                 MR. GREENBERGER:   No, you're not.

 4            No, you're not.  You're examining him on a

 5            document that the government of the United

 6            States does not even have the right to ask

 7            him about.

 8                 MS. PAYNE:   I disagree, Mr. Greenberger.

 9                 MR. GREENBERGER:   It is completely

10            improper.

11                 MS. PAYNE:   It is Mr. Rossini's

12            burden to substantiate any connection

13            between the criminal indictment and the

14            allegations in this case in order to invoke

15            his Fifth Amendment privilege.

16                 MR. GREENBERGER:   That is the

17            responsibility of his counsel in a response

18            to an application made to the district

19            court.  It is not the obligation of the

20            witness to answer questions about the

21            indictment that has been filed against him

22            in the District of Puerto Rico in a

23            situation where he currently is under

24            indictment and the government of the United

25            States does not have the right to ask him
```

```
1                    MARK T. ROSSINI
2           the very same questions you are right now.
3           It is entirely inappropriate in my view.  I
4           ask that you move on once again.
5                    MS. PAYNE:   We have a different
6           view with respect to whether this is
7           appropriate.  I am going to return now to
8           the questions that I was asking about --
9                    MR. GREENBERGER:   I want to also
10          add for the record since this is apparently
11          not going to be our last day dealing with
12          this, unfortunately.
13                   Mr. Nadler and I made ourselves
14          available on -- Mike, correct me if I'm
15          wrong, at least 3 or maybe 4 occasions to
16          discuss these matters.  It is my view that
17          if inquiring counsel had disclosed to us
18          that she intended to examine the witness on
19          the very indictment that he is currently
20          facing in the District of Puerto Rico, we
21          would have sought a protective order from
22          the court.  That intention was never
23          disclosed and that puts us in this
24          situation.
25                   But, again, had that been disclosed,
```

```
  1                    MARK T. ROSSINI
  2          we would have immediately sought a
  3          protective order.  You may continue.
  4                    MS. PAYNE:   Mr. Greenberger, I will
  5          note for the record while we have conferred
  6          with you multiple times on whether to your
  7          understanding there is any connection
  8          between the allegations in this indictment
  9          and the matters that are contained within
 10          our subpoena, you have thus far been unable
 11          to substantiate any connection between
 12          those matters or the allegations in those
 13          matters.
 14                    And I will note, again, that it is
 15          the witness' burden to justify the
 16          implication of his Fifth Amendment
 17          privilege and we will reserve our
 18          objections and our right to recall
 19          Mr. Rossini, if necessary.
 20                    MR. GREENBERGER:   I will just say,
 21          regardless of your position on the legal
 22          standard, I understand it is Mr. Rossini's
 23          burden, but that burden is not met by
 24          answering your questions under oath about
 25          the very indictment that is at issue.
```

```
 1                    MARK T. ROSSINI
 2               MS. PAYNE:   Okay, let's move on.  I
 3          would like to pull up the subpoena that we
 4          introduced as Exhibit 1.  Scroll back down
 5          to the list of names.
 6          Q.    Mr. Rossini, we were talking about
 7    Oleg Deripaska.  I believe I asked you before
 8    my colloquy with your attorneys whether
 9    Mr. Soriano or whether USG had ever performed
10    work for Mr. Deripaska.  Are you invoking your
11    Fifth Amendment privilege in response to that
12    question?
13          A.    Yes, as instructed by my attorney.
14               MR. GREENBERGER:   Objection, asked
15          and answered.
16          Q.    Has USG performed any work for
17    Mr. Deripaska before December, 2019?
18               MR. GREENBERGER:   Objection, state
19          the privilege.
20          A.    Fifth Amendment.
21               MR. GREENBERGER:   Objection,
22          litigation privilege and then now, Mark,
23          you can say what you said.
24          A.    Fifth Amendment.
25          Q.    Mr. Rossini, I will represent to
```

```
 1                    MARK T. ROSSINI
 2     you that Wanda Vasquez Garced became the
 3     Governor of Puerto Rico on August 7th, 2019.
 4     With that representation, will you answer the
 5     question whether USG has performed work for
 6     Mr. Deripaska before August 7th, 2019?
 7                    MR. GREENBERGER:   Objection to
 8               the form of the question.  Objection,
 9               litigation privilege.  Objection both
10               Mr. Nadler and Mr. Rossini told you that
11               any questions concerning Mr. Deripaska will
12               be responded by asserting the Fifth.  Mark,
13               you can answer.
14               A.    Fifth Amendment.
15               Q.    Has Mr. Soriano ever personally
16     done work for Mr. Deripaska?
17               A.    Fifth Amendment.
18               Q.    Has Mr. Soriano ever met
19     Mr. Deripaska?
20                    MR. GREENBERGER:   Objection,
21               litigation privilege.
22               A.    Fifth Amendment.
23               Q.    Does Mr. Soriano have any kind of
24     business relationship with Mr. Deripaska?
25                    MR. GREENBERGER:   Same objection.
```

```
                                                    Page 82

 1                       MARK T. ROSSINI
 2              A.       Fifth Amendment.
 3              Q.       Has Mr. Soriano ever communicated
 4        with Mr. Deripaska?
 5                       MR. GREENBERGER:   Same objection.
 6              A.       Fifth Amendment.
 7              Q.       Did USG ever work on a project
 8        related to the 2014 Olympics in Sochi, Russia?
 9                       MR. GREENBERGER:   Objection,
10                  litigation privilege, again the three that
11                  I enumerated earlier.
12              A.       Fifth Amendment.
13              Q.       Mr. Rossini, have you ever heard
14        of a woman named Nastya Rybka?
15              A.       It doesn't ring a bell.
16              Q.       Mr. Rossini, do you know whether
17        Mr. Soriano has ever travelled to Thailand?
18              A.       No clue.
19              Q.       Mr. Rossini, have you ever heard
20        of a company called Strabag?  S-t-r-a-b-a-g.
21              A.       I have to say Fifth Amendment or
22        litigation privilege, I don't know.
23                       MR. GREENBERGER:   Can you read back
24                  the question, please?
25                       (Requested portion of record read.)
```

```
                                              Page 83

 1                    MARK T. ROSSINI

 2          Q.    To be clear, Mr. Rossini, you're

 3     pleading the Fifth Amendment to my question

 4     have you ever heard of a company named Strabag?

 5          A.    Yes, exactly, that's the Fifth

 6     Amendment, right.

 7          Q.    Has USG ever done any work

 8     involving the company named Strabag?

 9               MR. GREENBERGER:   Objection,

10          litigation privilege.  Mark.

11          A.    Fifth Amendment.

12          Q.    Did Mr. Deripaska hire USG to

13     perform work involving the company Strabag?

14               MR. GREENBERGER:   Same objection.

15          A.    And the Fifth.

16          Q.    Let's move on to another name on

17     this list, Dimitri Rybolovlev.  Mr. Rossini, has USG

18     ever done any work for Mr. Rybolovlev?

19               MR. GREENBERGER:   Objection, same

20          litigation privilege by which I mean

21          attorney-client, work product and the

22          litigation privilege under UK law and I

23          will continue to use the term litigation

24          privilege.  Mark.

25          A.    Fifth Amendment.
```

```
 1                    MARK T. ROSSINI
 2              MS. PAYNE:   Mr. Greenberger, I
 3         don't think it is appropriate to invoke the
 4         litigation privilege for a question that
 5         required a yes or no answer.  I'm just
 6         asking for the fact of whether USG had ever
 7         performed work for Mr. Rybolovlev.  I'm not
 8         asking for the substance of any
 9         communications that may have happened
10         between a representative of USG and an
11         attorney in the course of seeking legal
12         advice.
13              MR. GREENBERGER:   So I will respond
14         to that briefly.  I don't know what I don't
15         know.  And to the extent that another party
16         has hired a law firm which hired an
17         investigative agency, I don't represent any
18         of those parties and I don't know what is
19         or is not covered and I certainly don't
20         pretend to be knowledgeable about UK law.
21              So as I said at the beginning, I'm
22         asserting it as somewhat of a protective
23         device to ensure no one later can say
24         Mr. Rossini or I as his attorney waived
25         someone else's privilege.
```

```
                                                  Page 85

 1                         MARK T. ROSSINI

 2                    I appreciate your position and I

 3            hope you can appreciate mine.  I don't

 4            represent the underlying parties and I

 5            don't know the nature of USG's work or

 6            representation with anyone, whether it is

 7            on this list or otherwise, and I'm just

 8            trying to be a little bit protective.  So I

 9            appreciate your position and I hope you

10            respect mine.

11                    MS. PAYNE:   I do respect your

12            position, Mr. Greenberger and I would also

13            appreciate if you could instruct your

14            client to try to answer the question to the

15            extent that he can without revealing any

16            confidential legal communications.

17                    MR. GREENBERGER:   Sure, but I don't

18            think that is at issue with this, because I

19            heard him to assert his Fifth, so he is not

20            answering the question.  Mark, did I hear

21            you right?

22                    THE WITNESS:  Yes.

23            Q.    Did USG ever perform work for

24      Mr. Rybolovlev involving an artwork dispute

25      with Yves Bouvier?
```

```
                                              Page 86

 1                    MARK T. ROSSINI

 2               MR. GREENBERGER:   Objection,

 3          litigation privilege.

 4          A.    I will say the Fifth again.

 5          Q.    Has USG ever worked to collect

 6     debts for Mr. Rybolovlev?

 7               MR. GREENBERGER:   Same objection.

 8          A.    And the Fifth.

 9          Q.    Has Mr. Soriano personally ever

10     collected debts for Mr. Rybolovlev?

11               MR. GREENBERGER:   I'm sorry, Erica --

12          Miss Payne, can we stop a second.  There

13          suddenly became a terrible echo.

14          Miss Payne, can you say anything?

15               MS. PAYNE:   Is that better?

16               MR. GREENBERGER:   Much better.

17          Sorry to interrupt.

18               MS. PAYNE:   No problem.

19          Q.    Mr. Rossini, I had asked you

20     whether Mr. Soriano personally had ever worked

21     to collect debts for Mr. Rybolovlev?

22               MR. GREENBERGER:   Objection,

23          litigation privilege.

24          A.    The Fifth.

25          Q.    Has USG ever performed work for
```

```
 1                    MARK T. ROSSINI
 2      Mr. Rybolovlev involving the soccer club AS
 3      Monaco?
 4                    MR. GREENBERGER:   Objection,
 5           litigation privilege.
 6           A.    The Fifth.
 7           Q.    Has USG ever performed work for
 8      Mr. Rybolovlev involving an individual named
 9      Ron Wahid?  W-a-h-i-d.
10                    MR. GREENBERGER:   Same objection.
11           A.    And the Fifth.
12           Q.    Has Mr. Soriano ever met
13      Mr. Rybolovlev?
14           A.    Fifth.
15           Q.    Has Mr. Soriano ever had any kind
16      of business relationship with Mr. Rybolovlev?
17           A.    The Fifth.
18                    MR. GREENBERGER:   I'm sorry, I'm
19           late there, same objection for me,
20           litigation privilege.
21           Q.    Mr. Rossini, I also would like to
22      ask you some questions about a few other
23      persons or entities that we believe USG has
24      performed work for.  Understanding that you may
25      invoke the Fifth Amendment in response to some
```

1                    MARK T. ROSSINI

2            Q.     Do you understand that this

3       subpoena ordered you to produce all documents

4       in your possession related to the topics that

5       we listed?

6            A.     Yes.

7            Q.     When I say documents, I mean both

8       physical and electronic documents.  Do you

9       understand that?

10           A.     Of course.

11           Q.     Did you take any steps to locate

12      documents that might respond to the topics

13      identified in our subpoena?

14           A.     Yes.

15           Q.     What steps did you take?

16                  MR. GREENBERGER:   Okay, now I'm

17                  going to object.  I have no problem asking

18                  him if he did.  But again, we are asserting

19                  the Fifth Amendment act of production

20                  privilege, I will be putting this a letter

21                  as you asked for and I represented that I

22                  would.  And I'm concerned about going too

23                  deep into this area because that vitiates

24                  the privilege that Mr. Nadler and I have

25                  already asserted on our client's behalf.

```
 1                         MARK T. ROSSINI
 2                 MS. PAYNE:   I'm just trying to get
 3             a sense of what steps Mr. Rossini took to
 4             look for documents that are in -- that are
 5             requested by the subpoena.  I'm not
 6             asking --
 7                 MR. GREENBERGER:   I appreciate
 8             that.  So as long as we understand it is
 9             not a waiver.  If you want to ask if he
10             searched for hard copy documents, e-mails,
11             I will allow that.  But I will not allow
12             what his analysis was because I think that
13             is what the active production privilege is
14             expressly there to cover.
15                 MS. PAYNE:   Let's do it this way.
16         Q.    Mr. Rossini, did you look for
17      physical documents in your possession that
18      might respond to our request?
19         A.    Yes.
20         Q.    Mr. Rossini, when you worked for
21      USG, did you use your personal laptop to
22      conduct your work?
23         A.    Well, I had an iPad that I used
24      for my work.  But when I was at the office I
25      used the office computer.
```

```
 1                    MARK T. ROSSINI
 2     data on it that was contained or your prior
 3     cell phone that you used while you worked for
 4     USG?
 5            A.     No, not that I know of.  No.
 6            Q.     You didn't transfer text messages
 7     from your old phone to your new phone, for
 8     example?
 9            A.     I have no text messages.  Nothing.
10     I have nothing, no.
11            Q.     When you say you have no text
12     messages --
13                 MR. GREENBERGER:   This is where I
14            was worried, I'm going to ask that the
15            prior answer be stricken because that's
16            exactly what we're getting into.
17                 Mark, again, they can ask you where
18            you searched, please don't talk about what
19            we have located, if anything.  Because I
20            don't want a situation later where someone
21            claims that with respect to the documents
22            that there is waiver.  Please don't answer
23            that.
24                 THE WITNESS:   Okay, I will not.
25            Q.     To be clear, you're asserting the
```

Page 112

1                      MARK T. ROSSINI

2       Fifth Amendment with respect to that question;

3       is that correct?

4                      MR. GREENBERGER:   No, you can read

5                  the question.   I thought the witness went

6                  beyond your question and started talking

7                  about what he has with his counsel located

8                  and that was my concern.

9                      MS. PAYNE:   I believe I asked

10                 whether Mr. Rossini routinely deletes text

11                 messages.

12                     MR. GREENBERGER:   No, no, you went

13                 down a longer line, you asked him about

14                 whether text messages transferred over from

15                 his old phone to new phone.

16                     MS. PAYNE:   Correct.

17                     MR. GREENBERGER:   And Mr. Rossini

18                 went beyond your question and started

19                 talking about what he had or didn't have on

20                 the phone and that's where my concern came

21                 from.   Quite candidly, counsel, there was

22                 nothing wrong with your question.   I'm

23                 asking the witness not to go into areas

24                 that Mr. Nadler and I have asserted or

25                 covered by the privilege.

Page 124

1                    C E R T I F I C A T E

2      STATE OF NEW YORK      )

3                              : ss.

4      COUNTY OF NEW YORK  )

5          I, WILLIAM VISCONTI, a Shorthand Reporter and

6      Notary Public within and for the State of New York,

7      do hereby certify:

8          That prior to being examined, the witness named in

9      the foregoing deposition was duly sworn to testify the truth,

10     the whole truth, and nothing but the truth;

11         That said deposition was taken down by me in

12     shorthand at the time and place therein named and

13     thereafter reduced by me to typewritten form and that the

14     same is a true, correct, and complete transcript of said

15     proceedings.

16         Before completion of the deposition, review of the

17     transcript [ X ] was [   ] was not requested.  If requested,

18     any changes made by the deponent (and provided to the

19     reporter) during the period allowed are appended hereto.

20         I further certify that I am not interested in the

21     outcome of the action.

22         Witness my hand this 19th day of January, 2023.

23

24

25                    WILLIAM VISCONTI

Page 125

1

2                 E X H I B I T S

3      DESCRIPTION                              PAGE

4

5        (Rossini Exhibit 1 for              54

6        identification, subpoena for

7        documents and testimony.)

8        (Rossini Exhibit 2 for              69

9        identification, indictment dated

10       August 3rd, 2022 in the matter

11       United States v. Wanda Vasquez

12       Garced.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 126

1    DAVID GREENBERGER, ESQ.

2    david@baileyduquette.com

3                        January 20, 2023

4    RE: In Re Application Of Forensic News Llc And Scott Stedman v.

5         1/13/2023, Mark T. Rossini (#5651668)

6         The above-referenced transcript is available for

7    review.

8         Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12        The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   CS-NY@veritext.com.

16

17    Return completed errata within 30 days from

18   receipt of testimony.

19     If the witness fails to do so within the time

20   allotted, the transcript may be used as if signed.

21

22                    Yours,

23                    Veritext Legal Solutions

24

25

Page 127

1    In Re Application Of Forensic News Llc And Scott Stedman v.

2    Mark T. Rossini (#5651668)

3                         E R R A T A   S H E E T

4    PAGE_____ LINE_____ CHANGE_____

5    _____

6    REASON_____

7    PAGE_____ LINE_____ CHANGE_____

8    _____

9    REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____     _____

24   Mark T. Rossini                              Date

25

Page 128

1    In Re Application Of Forensic News Llc And Scott Stedman v.

2    Mark T. Rossini (#5651668)

3                    ACKNOWLEDGEMENT OF DEPONENT

4        I, Mark T. Rossini, do hereby declare that I

5    have read the foregoing transcript, I have made any

6    corrections, additions, or changes I deemed necessary as

7    noted above to be appended hereto, and that the same is

8    a true, correct and complete transcript of the testimony

9    given by me.

10

11   _____    _____

12   Mark T. Rossini                     Date

13   *If notary is required

14                        SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                        _____ DAY OF _____, 20___.

16

17

18                        _____

19                        NOTARY PUBLIC

20

21

22

23

24

25